# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

AARON ROTHENBERG,

     Plaintiff,

v.                                 Case No. 3:23-cv-94-MMH-LLL

UNITED PARCEL SERVICE, INC.,

     Defendant.

_____

# **O R D E R**

**THIS CAUSE** is before the Court on Defendant's Motion for Judgment on the Pleadings (Doc. 25; Motion), filed on June 7, 2023. Plaintiff Aaron Rothenberg, proceeding <u>pro se</u>, initiated this action on January 26, 2023, by filing his Complaint (Doc. 1). Defendant United Parcel Service, Inc. (UPS) answered the Complaint on March 6, 2023. <u>See generally</u> Answer (Doc. 14). UPS now moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Rule(s)). Motion at 1. On July 3, 2023, Rothenberg filed his Response to Defendant's Motion for Judgment on the Pleadings (Doc. 28, Response).[1] For the reasons that follow, the Motion is due to be granted in part and denied in part.

_____

[1] Rothenberg first responded to the Motion on June 21, 2023, but the Court struck this response because it did not comply with the Court's typography requirements. <u>See</u> Order (Doc. 27) at 1–2, entered June 27, 2023. In doing so, the Court permitted Rothenberg to "file

## I.    Background[2]

As both parties acknowledge, this case against UPS is one of three related cases brought by Rothenberg that were either filed in or removed to the Jacksonville Division of the Middle District of Florida.  See Motion at 1–2; Response at 1.  Each case involves nearly identical allegations regarding "a vast conspiracy among UPS, FedEx Corporation, Wal-Mart, Costco, Target, and Knight Swift Transportation to stalk [Rothenberg], assault him, and spread misinformation about him."[3]   Motion at 1.

Rothenberg has been a professional driver since 2018.   Complaint ¶¶ 1–2.   He frequently encounters UPS's "fleet drivers, delivery drivers, and contractors" on the road and at UPS's "sites" around the country, including in Jacksonville, Florida.   Id. ¶ 3.   In these encounters, Rothenberg alleges that UPS engages in a continuous and multi-faceted conspiracy to assault, defame, humiliate, injure, intimidate, and surveil him, including attempts to "extort self-harm by way of [Rothenberg's] suicide."   See id. ¶¶ 4–5.   He contends that this conspiracy includes "personnel from the top to the bottom" of UPS's

---

a response that complies with the Local Rules" no later than July 10, 2023.   Id. at 2. Accordingly, Rothenberg timely filed the Response.

[2] In considering the Motion, "the court reviews a plaintiff's pro se allegations in a liberal fashion, accepts all factual allegations in the complaint as true, and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff." See Freeman v. Fine, 820 F. App'x 836, 838 (11th Cir. 2020).   As such, the facts recited here are drawn from the Complaint and may well differ from those that ultimately could be proved.

[3] Rothenberg's case against Knight Swift, Wal-Mart, Costco, and Target is assigned the case number 3:21-cv-1213-MMH-LLL.   His case against FedEx Corporation is case number 3:23-cv-93-MMH-LLL.

organization, including "[m]anagement personnel at every level." <u>Id.</u> ¶ 8. Rothenberg asserts that "defamatory statements" have been screamed at him and shared "internally within [UPS's] organizational structure" to "cause public contempt" for him. <u>Id.</u> ¶¶ 12–14. He also states that he has "been assaulted, both verbally and through gesture" at distribution centers, hotels, truck stops and rest areas, as well as on the road and in his home. <u>Id.</u> ¶ 16. Rothenberg alleges that he has experienced this "seemingly nonstop spree of assault" since August of 2021, and describes, albeit quite generally, a wide array of offensive conduct. <u>Id.</u> ¶¶ 16–18. In addition, Rothenberg contends that UPS makes "constant attempts" to keep him "under surveillance" wherever he goes, and then releases his private information to the public. <u>Id.</u> ¶¶ 19–27. According to Rothenberg, UPS does this deliberately to offend him, invade his privacy, and "torment [him] with the idea that the concept of a private life does not exist." <u>Id.</u> ¶ 26.

In the Complaint, Rothenberg brings six claims against UPS. He does not number them as separate counts, but for clarity and ease of reference the Court will do so. In Count I, Rothenberg alleges a claim of defamation based on false statements he believes UPS is spreading about him. <u>Id.</u> ¶¶ 12–15. In Count II, Rothenberg asserts a claim of assault based on verbal and physical threats. <u>Id.</u> ¶¶ 16–18. In Counts III and IV, he brings claims for invasion of privacy under two theories: intrusion upon seclusion and public disclosure of

private facts, respectively.[4]  Id. ¶¶ 19–27.  In Count V, he raises a claim of intentional infliction of emotional distress.  Id. ¶¶ 28–30.  And, in Count VI, he asserts a conspiracy claim based on the internal and external conduct of UPS employees.  Id. ¶¶ 31–33.  Rothenberg seeks relief in the form of compensatory damages, punitive damages, and a permanent injunction to prevent future tortious conduct.  Id. ¶¶ 34–40.

UPS filed an Answer to the Complaint in which it denies all of Rothenberg's material factual allegations.  See generally Answer.  In the Motion, UPS now "requests this Court enter judgment on the pleadings" in its favor based on Rothenberg's failure to state any claim upon which relief can be granted.  Motion at 2.  Noting the protracted litigation of Rothenberg's lawsuit against Knight Swift, Wal-Mart, Costco, and Target, UPS argues that entry of judgment in its favor will "curtail [Rothenberg's] repeated abuse of process and prevent UPS from incurring significant cost defending against a meritless action."  Id.  In the conclusion of the Motion, UPS requests that Rothenberg "be prohibited from filing further pleadings in this division absent

---

[4] Because Rothenberg places these two claims under a single heading, it is not clear whether he intended to plead two counts of invasion of privacy or a single count consisting of two claims.  Construing the Complaint liberally, the Court will assume that Rothenberg intended these to be separate counts because he placed them under separate subheadings. The Court notes that if the two claims were set forth in a single count, the Complaint would "likely run[ ] afoul of Rule 10(b)."  Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1322–23 & n.13 (11th Cir. 2015) (describing "the sin of not separating into a different count each cause of action or claim for relief").

leave of the Court." Id. at 13.   In response, Rothenberg contends that he has sufficiently alleged each cause of action that he asserts. See Response at 6. Accordingly, he argues that judgment in UPS's favor is not appropriate, and adds that "prohibiting [him] from further pleadings is ludicrously unnecessary when [he] has received no warnings from the Court about abusive or vexatious behaviors." Id. at 14.

## II.    Standard of Review

Rule 12(c) provides that a party may move for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial— . . . ." Rule 12(c).   Entry of a judgment on the pleadings is proper when there are no issues of material fact, and the movant is entitled to judgment as a matter of law.   See Rule 12(c); Ortega v. Christian, 85 F.3d 1521, 1524 (11th Cir. 1996). As such, a court should enter judgment on the pleadings only "when material facts are not in dispute and judgment can be rendered by looking at the substance of the pleadings and any judicially noticed facts."   Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 137 F.3d 1293, 1295 (11th Cir. 1998).

Here, all of the material facts are in dispute as UPS has denied all of the material allegations Rothenberg sets forth in his Complaint.   Nevertheless, UPS seeks entry of judgment based on its contention that, as a matter of law, Rothenberg has failed to state any plausible claim for relief.   Notably, in ruling

on a motion for judgment on the pleadings, the Court applies a standard very similar, if not identical, to that used when ruling on a motion to dismiss brought pursuant to Rule 12(b)(6). Horsley v. Feldt, 304 F.3d 1125, 1131 (11th Cir. 2002). Indeed, "[t]he ultimate question on a motion for judgment on the pleadings under Rule 12(c) is the same as on a motion to dismiss under Rule 12(b)(6)—whether the complaint states a claim for relief." See Powers v. Sec'y, U.S. Homeland Security, 846 F. App'x 754, 757 (11th Cir. 2021) (citing Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.8 (11th Cir. 2002)).[5] As such, in ruling on the Motion, the Court must determine whether Rothenberg has pled plausible claims for relief.

In assessing the plausibility of Rothenberg's claims, the Court accepts the factual allegations set forth in the Complaint as true and views them in the light most favorable to Rothenberg. See Horsley, 304 F.3d at 1131; Ortega v. Christian, 85 F.3d 1521, 1524–25 (11th Cir. 1996); Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009). In addition, the Court draws all reasonable inferences in his favor. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, Rothenberg must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262–

---

[5] The Court does not rely on unpublished opinions as binding precedent, however they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

63 (11th Cir. 2004) (citations omitted).   While "[s]pecific facts are not necessary[,]" Rothenberg's Complaint should "'give the defendant fair notice of what the . . . claim[s are] and the grounds upon which [they] rest[ ].'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   Further, for each claim, Rothenberg must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Iqbal, 556 U.S. at 678, (citing Twombly, 550 U.S. at 556).   A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal" (internal citation and quotations omitted)).   Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth."   See Iqbal, 556 U.S. at 679.   Thus, in ruling on a motion for judgment on the pleadings based on the insufficiency of a plaintiff's complaint, the Court must

determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   See id. at 678 (quoting Twombly, 550 U.S. at 570).

Rule 7(a) defines "pleadings" as complaints, counterclaims, crossclaims, answers, and court-ordered replies to answers.   See Rule 7(a).   While a court's resolution of a motion for judgment on the pleadings is ordinarily limited to a review of such "pleadings," certain documents attached to a complaint may also be considered on such a motion.   See Tassinari v. Key West Water Tours, L.C., 480 F. Supp. 2d 1318, 1320 (S.D. Fla. 2007);[6]   Rule 10(c).   Indeed, the Eleventh Circuit Court of Appeals has recognized that pursuant to the incorporation by reference doctrine, attachments to pleadings may properly be considered on a motion for judgment on the pleadings if the attachments are central to the plaintiff's claim, and are undisputed in that their authenticity is not challenged. See Horsley, 304 F.3d at 1134 (holding that the incorporation by reference doctrine adopted in Rule 12(b)(6) decisions is also applicable to Rule 12(c) cases).

### III.   Discussion

As an initial matter, UPS challenges Rothenberg's Complaint as an impermissible shotgun pleading.   While it is unclear what relief UPS seeks

---

[6] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.   See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

based upon this contention, the Court will first consider whether Rothenberg's Complaint runs afoul of the prohibition against shotgun pleadings.

### A.   Is the Complaint a Shotgun Pleading?

UPS argues that Rothenberg's Complaint is a "shotgun pleading" which the Court has the power to strike sua sponte.  See Motion at 5.  In support, UPS cites the Eleventh Circuit's description of a common type of shotgun pleading—one which is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action."  Id. (quoting Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321–22 (11th Cir. 2015)).  Upon review of the Complaint, the Court is not convinced that it is fatally deficient in this regard.  As discussed below, while the Court finds that Rothenberg's allegations are too conclusory to state claims for relief, his allegations do not appear so disconnected from "any particular cause of action" as to render the Complaint a shotgun pleading.  See Weiland, 792 F.3d at 1321–22 & n.12 (describing this category of shotgun pleading, and providing examples where "a reader of the complaint must speculate as to which factual allegations pertain to which count" (quoting Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1359 n.9 (11th Cir. 1997)); see also Commodity Futures Trading Comm'n v. Montano, No. 6:18-cv-1607-Orl-31GJK, 2019 WL 3219659, at *2 (M.D. Fla. July 17, 2019) (determining that a complaint was not a shotgun pleading because the "allegations [were] clearly organized by topic" and it was

not "impossible to know which allegations of fact [were] intended to support which claims for relief"). Rothenberg attempts to organize his factual allegations based on the cause of action he believes them to support. See, e.g., Complaint ¶¶ 24–27 (asserting a claim for public disclosure of private facts, and supporting it with allegations about facts Rothenberg believes UPS to have "publicly disclose[d]"). And a review of the Motion discloses that UPS is able to identify and understand each of Rothenberg's claims and explain why, in each count, he failed to state a plausible claim for relief. Accordingly, the Court is not persuaded that Rothenberg's Complaint is due to be stricken as a shotgun pleading.[7]

### B. Does Rothenberg State Any Plausible Claim for Relief?

UPS next argues that Rothenberg's allegations lack sufficient detail to state any claim for relief that is plausible on its face. See Motion at 6. On this issue, UPS is correct.[8]

---

[7] Notably, UPS cites no authority suggesting that even if the Court were to find Rothenberg's Complaint to be a shotgun pleading, such a finding would warrant entry of judgment in UPS's favor. Indeed, such a contention would be contrary to Circuit precedent. When a litigant files a shotgun pleading, the Eleventh Circuit has instructed that the Court should strike the pleading, instruct the party on the rules of proper pleading, and sua sponte give him an opportunity to replead. Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1296 (11th Cir. 2018).

[8] In reaching this conclusion, the Court need not determine whether Rothenberg's allegations are "fantastical," "unbelievable," or "pure fantasy that offend[s] common sense," as UPS describes them. See Motion at 1, 3, 7. Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Neitzke v. Williams, 490 U.S. 319, 327 (1989) (explaining that Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a

Upon careful review of the Complaint, the Court is convinced that Rothenberg fails to give UPS fair notice of the basis of his claims, and simply has not pleaded enough facts to support a reasonable inference that UPS is liable for the conduct about which he complains.   Although Rothenberg asserts that "personnel from the top to the bottom of" UPS's organization—including "[m]anagement personnel at every level"—have engaged in tortious behavior, Complaint ¶ 8, this allegation is nothing but a broad conclusion, and Rothenberg does not provide any facts to explain how he knows that his assailants were UPS employees.[9]   Nowhere does Rothenberg identify a single employee by name or description, provide examples of any specific incident in which he experienced the untoward conduct, or explain how he attributes that conduct to UPS employees.   Instead, he refers to an exceedingly vague and wide range of tortious behavior from "a variety of parties" at a multitude of locations.   See id. ¶ 10 (describing this conduct as occurring "within the scope of [Rothenberg's] employment," at "hotel rooms," at Rothenberg's home, and at

_____

complaint's factual allegations").   Instead, the Court's role is to set aside Rothenberg's allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth," and then, accepting the well-pleaded factual allegations as true, determine if those remaining facts would allow "the [C]ourt to draw the reasonable inference that [UPS] is liable for the misconduct alleged."   See Iqbal, 556 U.S. at 678–79.   However, if these "facts are 'merely consistent with' [UPS's] liability" then they stop "short of the line between [the] possibility and plausibility" of Rothenberg's entitlement to relief.   See id. at 678 (emphasis added) (quoting Twombly, 550 U.S. at 557).

[9] As Rothenberg notes in his Response, in his related cases he alleges that other defendants have engaged in "virtually identical misconduct."   Response at 4.   This makes it even less clear why Rothenberg believes that employees of UPS are responsible.

"other places of note").   While Rothenberg generally identifies the types of tortious behavior about which he complains, he fails to provide any factual assertions supporting his claims, and instead relies entirely on broad, vague, and wholly conclusory statements.

Before addressing each of Rothenberg's claims, the Court considers Rothenberg's reliance on camera footage he submitted in his case against Knight Swift.   See id. ¶¶ 10–11 (describing physical materials filed in Rothenberg v. Knight Swift Trans., No. 3:21-cv-1213-MMH-LLL); Response at 2 (same).   In that case, Rothenberg filed several hard drives containing "hours and hours of video footage" that, according to him, show UPS "employees enacting all the conduct mentioned within the complaint."   Response at 7. Although ordinarily a court may not consider materials outside the complaint in ruling on a motion to dismiss, there is an exception when the document is referenced in the complaint, central to the plaintiff's claim, and of undisputed authenticity.   See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005); Horsley, 304 F.3d at 1134–35 (holding that this principle applies "in Rule 12(c) cases as well" as motions to dismiss).   However, the Court is not convinced that this principle applies here.   The videos are not attached to the Complaint or the Motion; indeed, they are not part of the record in this case at all.   Even if they were, it is unclear that the videos—as opposed to the events they purportedly depict—are "central" to the Complaint.   Cf. Day, 400 F.3d at 1275–76 (holding

that the text of a contract was "central" to a complaint because it was "a necessary part of [the plaintiff's] effort to make out a claim").   And while the Court has access to the footage, it is not apparent that UPS (who is not a party to Rothenberg's case against Knight Swift) is able to evaluate its authenticity.

Regardless, the Court must determine whether Rothenberg states a claim by analyzing the well-pled allegations of fact in this Complaint.   Even if the Court could consider Rothenberg's supplemental materials in ruling on the Motion, it would not relieve Rothenberg of his obligation to plead "enough facts to state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 570, nor would it provide the Court with "'license to serve as de facto counsel for [Rothenberg] or to rewrite [his] otherwise deficient pleading'" based upon what the Court observes in the videos.   Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011); see also Michel v. NYP Holdings, Inc., 816 F.3d 686, 705–06 (11th Cir. 2016) (rejecting an argument against dismissal "because it depend[ed] on facts . . . that were not pled in [the complaint]" (emphasis added)).   Rothenberg must apprise UPS of the claims he is bringing in his Complaint.   Rothenberg's references to videos filed with the Court in another case against another defendant utterly fail to give UPS such notice.   In addition, Rothenberg does not explain how or what portion of the videos support

his allegations.[10]   Thus the Court declines to consider the content of the videos and will determine the sufficiency of Rothenberg's claims by reference to the allegations of the Complaint.

### i. Defamation

In Count I, Rothenberg brings a claim of defamation based on false statements that he alleges UPS employees have "screamed" about him "on the open road, nationwide in the public eye," as well as "internally within its organizational structure and to business associates nationwide."   See Complaint ¶ 12.   Under Florida law, "[d]efamation has the following five elements: (1) publication; (2) falsity; (3) [the] actor must act . . . at least negligently on a matter concerning a private person; (4) actual damages; and (5) [the] statement must be defamatory."   Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008) (citing Restatement (Second) of Torts §§ 558B, 580A–580B (Am. L. Inst. 1977)).[11]   UPS argues that Rothenberg's pleading of Count I

---

[10]   Rothenberg is cautioned that if he seeks to rely on the video footage in future filings, it is his responsibility to direct the Court—and opposing counsel—to specific portions of any video he believes support his claims, and to specifically explain how he believes that they do. "Judges are not like pigs, hunting for truffles buried in the record."   See Corley v. Rosewood Care Ctr., Inc., 388 F.3d 990, 1001 (7th Cir. 2004) (internal quotation marks omitted) (declining to "root through . . . hundreds of documents . . . to make [a plaintiff's] case for him").

[11]   Because the case is before the Court based on diversity jurisdiction, see Complaint ¶ 1, the substantive law of the forum state, Florida, applies.   See Horowitch v. Diamond Aircraft Indus., Inc., 645 F.3d 1254, 1257 (11th Cir. 2011) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).   Rothenberg also states that "a substantial part of the events" giving rise to his claims occurred in the Middle District of Florida.   See Complaint ¶ 2; see also Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1301 (11th Cir. 2003) (stating that "Florida utilizes the 'most significant relationship' test to determine which state's laws appl[y] to tort claims").   As such, the Court applies Florida law in evaluating the sufficiency

is deficient because his "allegations as to each element lack plausibility." Motion at 6. In particular, UPS emphasizes that Rothenberg does not plausibly allege facts to support the publication element because in his Complaint he "does not identify who made the statements, when they were made, or where they were made to any degree of specificity." Id. UPS also contends that Rothenberg has failed to allege any non-conclusory facts to establish its "negligence in making the statements." Id. at 6–7.

UPS is correct. Rothenberg describes statements "that the Plaintiff is a rapist, a murderer, a cop killer, [and] a serial killer," among several other things. See Complaint ¶ 13. But he does not present any factual allegations regarding the circumstances of any particular statement, such as where or when the statement was made, the person (or persons) who made the statement, or to whom it was made. He simply states that UPS, "through the agency" of its employees, "screamed" these statements "nationwide" and "intentionally told [them] to as many persons as possible" as part of a course of conduct that has been ongoing "since 2018." Id. ¶¶ 12, 14. These allegations are simply too conclusory to be entitled to a presumption of truth. See Iqbal, 556 U.S. at 679. Accordingly, Rothenberg has not pleaded sufficient factual

---

of Rothenberg's claims.

material, accepted as true, to state a claim for defamation that is plausible on its face.  See Twombly, 550 U.S. at 570.

### ii. Assault

In Count II, Rothenberg brings a claim for assault based on statements and "gestures" made by UPS employees.  See Complaint ¶¶ 16–18.  "Florida law defines assault as 'an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril.'"  Cutino v. Untch, 79 F. Supp. 3d 1305, 1315 (S.D. Fla. 2015) (quoting Sullivan v. Atl. Fed. Sav. & Loan Ass'n, 454 So. 2d 52, 54 (Fla. 4th DCA 1984)).  As to this Count, UPS argues that Rothenberg "fails to allege critical facts, such as any level of detail about who made the alleged statements, when the statements were made, and under what circumstances."  Motion at 8.  Without allegations to establish the circumstances of the threats in question, UPS asserts that Rothenberg has not plausibly alleged that his fear was reasonable under the circumstances.  See id.

Much like his claim for defamation, Rothenberg presents conclusory statements that he "has been assaulted," and that UPS is responsible for the litany of statements and gestures he describes.[12]  See Complaint ¶¶ 16–18.

---

[12] The Court notes that not all of Rothenberg's allegations are equally conclusory in describing the circumstances of the conduct.  For example, Rothenberg describes "threats to

But these conclusory assertions are not "factual content that allows the [C]ourt to draw the reasonable inference that [UPS] is liable for" assault.   See Iqbal, 556 U.S. at 678.   Nor do Rothenberg's broad, conclusory allegations provide UPS with any notice of the factual basis of his claims.   Rothenberg provides no facts to explain why he believes that UPS was involved in the conduct, nor does he describe any example of this conduct with enough detail for the Court to draw a reasonable inference that UPS was responsible for it, or that Rothenberg was in fear of imminent peril, much less that such fear was reasonable under the circumstances.   Accordingly, Rothenberg simply has not stated a claim for assault that is plausible on its face.   See Twombly, 550 U.S. at 570.

### iii.  Intrusion Upon Seclusion

In Count III, Rothenberg brings a claim for intrusion upon seclusion. See Complaint ¶¶ 19–23.   "Florida law defines intrusion [upon seclusion] as 'physically or electronically intruding into one's private quarters.'"   Oppenheim v. I.C. System, Inc., 695 F. Supp. 2d 1303, 1308 (M.D. Fla. 2010) (quoting Allstate Ins. Co. v. Ginsberg, 863 So. 2d 156, 162 (Fla. 2003)).   The intrusion "must be highly offensive to a reasonable person."   Id. at 1309.   UPS contends that Rothenberg has not plausibly alleged that it intruded upon his seclusion

---

run [him] off the road while driving a commercial motor vehicle," which included "gestures of and physically jerking of the wheel in" Rothenberg's direction.   See Complaint ¶ 17.   But while this may provide more detail than his other examples, Rothenberg does not present additional facts which identify a particular instance when this conduct occurred, or which plausibly show that it involved a UPS employee.

because Rothenberg "does not allege the nature of the intrusion," "fails to identify the 'who' and 'when' necessary to tie UPS to the conduct alleged," and has not pleaded sufficient factual content to suggest that the intrusion "was highly offensive to a <u>reasonable</u> person."   Motion at 8–9.

In his Complaint, Rothenberg asserts that UPS "has intruded upon [his] seclusion . . . whenever possible."   Complaint ¶ 19.   He also asserts that these intrusions are done "to surveil" him and gather his personal information, and also to keep him "under the assault described" elsewhere in his Complaint.   <u>See id.</u> ¶¶ 20–22.   However, Rothenberg does not provide any details about any particular intrusion—not even one—nor does he allege facts to explain why he ascribes any such intrusion to UPS.   <u>See id.</u> ¶¶ 19–22.   Instead, he merely states that the intrusions—whatever they may be—occurred at hotel rooms, at his residence, and in the sleeper cab of his vehicle, that the intrusions were for the purpose of gathering private information and causing him distress, and that the intrusions would be "highly objectionable and offensive to a reasonable person, especially when conducted nationwide."   <u>See id.</u> ¶¶ 20–23.   In sum, these statements are no more than legal conclusions which simply lack any factual content to allow "the Court to draw the reasonable inference that" UPS intruded upon Rothenberg's seclusion or that this intrusion was "highly offensive" to a reasonable person.   <u>See Iqbal</u>, 556 U.S. at 678; <u>Oppenheim</u>, 695 F. Supp. 2d at 1309.

### iv.  Public Disclosure of Private Facts

In Count IV, Rothenberg asserts a claim for public disclosure of private facts.  <u>See</u> Complaint ¶¶ 24–27.   Under Florida law, the elements of a claim of public disclosure of private facts are: 1) the publication, 2) of private facts, 3) that are offensive, and 4) are not of public concern.   <u>Spilfogel v. Fox Broadcasting Co.</u>, 433 F. App'x 724, 725 (11th Cir. 2011 (citing <u>Cape Publ'ns, Inc. v. Hitchner</u>, 549 So. 2d 1374, 1377 (Fla. 1989)).   UPS argues that Rothenberg's allegations in support of this claim are too conclusory to state a plausible claim for relief because they do not provide any specific details about the alleged disclosures, such as "how UPS allegedly obtained [Rothenberg's] information, who was responsible for publishing the information, how it was published, when it was published, and who heard it."   Motion at 9.

Here, too, UPS is correct.   While Rothenberg alleges that UPS disclosed several specific categories of his information, including his "home address, passwords . . . phone number," and banking data, he does not provide any factual allegations to support these conclusions.   <u>See</u> Complaint ¶ 24. Moreover, Rothenberg includes no facts which suggest when or how UPS got the information, when or how UPS published the information, who received it, or how Rothenberg learned that this was occurring.   Given the scope of Rothenberg's allegations, his conclusory pleadings simply do not contain

enough factual content to give UPS fair notice of his claim or state a plausible claim for public disclosure of private facts.

### v. Intentional Infliction of Emotional Distress

In Count V, Rothenberg brings a claim for intentional infliction of emotional distress (IIED).  See id. ¶¶ 28–30.  "Under applicable Florida law, in order to state a cause of action for intentional infliction of emotional distress the plaintiff must demonstrate: 1) deliberate or reckless infliction of mental suffering by defendant; 2) by outrageous conduct; 3) which conduct of the defendant must have caused the suffering; and 4) the suffering must have been severe."  See Golden v. Complete Holdings, Inc., 818 F. Supp. 1495, 1499 (M.D. Fla. 1993).  UPS contends that Rothenberg has not pleaded sufficient factual allegations to support a plausible inference that UPS engaged in the relevant conduct, let alone that it did so recklessly or intentionally.  See Motion at 10.

Rothenberg appears to base his claim for IIED on the acts he ascribes to UPS in his other counts.  See Complaint ¶ 28 (referring to "the tortious conduct described herein").  He also asserts that he was "followed inappropriately," and that UPS "screamed statements of assault and defamation" and threatened to harm third parties if Rothenberg "d[id] not 'do whatever they say.'"  Id. ¶ 30. To the extent that Rothenberg's claim for IIED is based on the conduct he describes in his previous counts, the allegations fail to provide a plausible factual basis for the claim for the same reasons discussed above.  And in Count

V, Rothenberg does not provide additional facts that, if true, would support an inference that UPS is liable for the wrong he asserts.   Instead, Rothenberg supports his claim with a string of legal conclusions which are not entitled to a presumption of truth.   See Iqbal, 556 U.S. at 679.   Accordingly, Rothenberg's claim for IIED fares no better than the previous claims.

### vi.  Conspiracy

In Count VI, Rothenberg asserts a claim for conspiracy.   See Complaint ¶ 31–33.   To state a claim for civil conspiracy pursuant to Florida law, one must allege: "(1) an [agreement] between two or more parties; (2) to do an unlawful act or do a lawful act by unlawful means; (3) the doing of some overt act in [furtherance] of the conspiracy; and (4) damage to [the] plaintiff as a result of the acts done under the conspiracy."   See, e.g., TracFone Wireless, Inc. v. Pak China Grp. Co. Ltd., 843 F. Supp. 2d 1284, 1301 (S.D. Fla. 2012); see also Philip Morris USA, Inc. v. Russo, 175 So. 3d 681, 686 n.9 (Fla. 2015).   UPS argues that Rothenberg has not alleged sufficient facts to plausibly support his conspiracy claim because he provides "no description of the agreement between [UPS] and the unnamed co-conspirators," and does not "suggest how or when [the conspirators] convened, who was involved, what was decided, or how the conspiracy could be implemented."   Motion at 11.   In response, Rothenberg simply asserts that his "similar allegations against Costco, Wal-Mart, Target, Knight Swift Transportation, and FedEx" in his other cases suggest that those

entities "were involved" in the conspiracy.  Response at 12–13.  In addition, he repeats his contention that "the associated camera footage" provides factual support for "the 'overt act' element."  See id.

While UPS's criticism of the deficiency of Rothenberg's pleading is likely well taken, the claim fails for another reason.  A claim for civil conspiracy will not lie unless the plaintiff alleges an underlying civil wrong, done pursuant to the conspiracy, which results in damage to the plaintiff.  See Marriott Int'l v. Am. Bridge Bahamas, Ltd., 193 So. 3d 902, 909 (Fla. Dist. Ct. App. 2015).  Moreover, the "independent civil wrong on which the civil conspiracy is dependent must be alleged in the complaint."  Id.  If the claim for the underlying civil wrong fails, then it cannot serve as the basis for the conspiracy claim.  See Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1067 (11th Cir. 2007) (citation omitted) (applying Florida law); see also 2002 Irrevocable Trust for Richard C. Hvizdak v. Huntington Nat'l Bank, No. 2:08-CV-556-FTM-99DNF, 2008 WL 5110778, at *11 (M.D. Fla. Dec. 1, 2008) (having dismissed the fraud claim, the court must "dismiss the civil conspiracy claim as there is no longer an underlying tort or underlying unlawful act to form the basis of a conspiracy").

Here, Rothenberg cannot maintain his claim for conspiracy because he has not sufficiently pled any underlying civil wrong.  See Martinez, 480 F.3d at 1067.  In Count VI, Rothenberg fails to allege any additional facts, and

simply presents legal conclusions that UPS "conspired to accomplish an unlawful purpose," "committed an unlawful overt act to further the object of [its] course of action," and "conspired internally nationwide" to subject Rothenberg to tortious conduct. See Complaint ¶¶ 31–33. These allegations are simply "a formulaic recitation of the elements of a cause of action," and as such they simply do not suffice to state a claim for relief that is plausible on its face. See Twombly, 550 U.S. at 555.

For all the reasons discussed above, Rothenberg's claims are due to be dismissed because each one fails to include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Indeed, the allegations in Rothenberg's Complaint are best described as "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts," which are insufficient to state any plausible claim to relief. Jackson, 372 F.3d at 1262. Such allegations amount to nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." Iqbal, 556 U.S. at 678. In sum, the Complaint as currently pled neither gives UPS fair notice of the claims Rothenberg brings nor contains sufficient factual matter to allow the Court to conclude that he states any plausible claim to relief.

## IV.   UPS's Requested Relief

Having determined that Rothenberg's Complaint fails to state any claim upon which relief can be granted, the Court turns to the question of whether

the entry of "judgment in favor of UPS is appropriate."  <u>See</u> Motion at 13.   In general, a <u>pro se</u> plaintiff "must be given at least one chance to amend" a complaint before a district court dismisses it with prejudice.  <u>Silberman v. Miami Dade Transit</u>, 927 F.3d 1123, 1132 (11th Cir. 2019) (quoting <u>Woldeab v. Dekalb Cnty. Bd. Of Educ.</u>, 885 F.3d 1289, 1292 (11th Cir. 2018)).   Likewise, a <u>pro se</u> plaintiff must generally be given a chance to amend a deficient complaint before a district court enters judgment on the pleadings in favor of the defendant.   <u>See</u> <u>Hines v. Wainwright</u>, 539 F.2d 433, 434 (5th Cir. 1976) (vacating an order granting judgment on the pleadings because the plaintiff's "initial pro se complaint ha[d] not been amended");[13] <u>Powers</u>, 846 F. App'x at 758–59 (explaining that a district court "abused its discretion by entering judgment [on the pleadings] for the defendants without first giving [the <u>pro se</u> plaintiff] leave to amend her complaint or assessing whether such amendment would be futile").

The Court recognizes that leave to amend is not warranted "if a more carefully drafted complaint could not state a claim."  <u>Silberman</u>, 927 F.3d at 1133 (citations omitted).   Here, Rothenberg's Complaint is deficient because the factual allegations are far too vague and conclusory, and thus lack sufficient

---

[13] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

detail to state a claim for relief.   However, the Court is not so convinced that "a more carefully drafted complaint could not state a claim," id., as to warrant the entry of judgment on the pleadings without allowing Rothenberg the opportunity to file an amended complaint.[14]   As such, the Court will dismiss Rothenberg's Complaint without prejudice and give him an opportunity to file an amended complaint.[15]   See Hogan v. Provident Life & Acc. Ins. Co., No. 6:08-cv-1897-Orl-19KRS, 2009 WL 2169850, at *3 (M.D. Fla. July 20, 2009) ("If the court finds [a] motion [for judgment on the pleadings] to be meritorious, it does not have to grant final judgment to the defendant; instead, the court may dismiss the complaint without prejudice to the filing of an amended complaint.").

Rothenberg is cautioned that he must carefully review the pleading requirements discussed in this order as well as the requirements of Rules 8 and

---

[14] In evaluating the Motion, UPS invites the Court to take judicial notice of Rothenberg's pleadings in his other two cases.   See Motion at 3 n.4; id. at 13 (arguing that "judgment in favor of UPS is appropriate" in light of Rothenberg's "pleading failures in this case and in Rothenberg I and II").   In doing so, UPS cites the rule that "courts can take judicial notice of court records 'for the limited purpose of establishing the fact of such litigation, the record's existence, and the record's content.'"   Id. at 3 n.4.   However, UPS does not cite any authority suggesting that the Court may take judicial notice of the legal sufficiency of Rothenberg's pleadings in other cases.   The Court need not reach this issue. Assuming arguendo that the Court may take such notice, the mere fact that other defendants have prevailed on motions to dismiss other complaints in other cases would do little to convince the Court that amendment would be futile in this case.

[15] While UPS requests that Rothenberg "should be prohibited from filing further pleadings in this division absent leave of the Court," it does not cite, let alone apply, any legal authority to argue for this extraordinary relief.   The Court declines to consider this legally unsupported, conclusory request.

10 of the Federal Rules of Civil Procedure.   Failure to satisfy these requirements likely will result in a dismissal of this action with prejudice.

**V.      Conclusion**

For the reasons discussed, Rothenberg's Complaint fails to state a claim upon which relief can be granted.   But because Rothenberg is proceeding <u>pro se</u>, the Court will not enter judgment in favor of UPS before giving Rothenberg an opportunity to submit an amended complaint.   Accordingly, it is

**ORDERED:**

1.     Defendant's Motion for Judgment on the Pleadings (Doc. 25) is **GRANTED in part and DENIED in part**.

     a. The Motion is **GRANTED** to the extent that Rothenberg's Complaint (Doc. 1) is **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

     b. The Motion is otherwise **DENIED**.

2.      Rothenberg may file an amended complaint no later than **December 5, 2023**.[16]

**DONE AND ORDERED** in Jacksonville, Florida this 2nd day of November, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc31

Copies to:

Counsel of Record
Pro Se Parties

---

[16] Rothenberg is cautioned that failure to meet this deadline may result in the dismissal of this action for failure to prosecute.